O’NIEDL, C. J.
 

 The plaintiff has appealed from a judgment dismissing his suit for $9,-786.73, claimed as a' balance due under an alleged contract of employment as consulting engineer. He is a civil engineer of high standing and vast experience, and especially learned and experienced in municipal paving and drainage work. The defendant is a contractor, engaged principally in doing municipal paving and drainage work. Desiring to
 
 *751
 
 bid on certain paving and subsurface contracts in New Orleans, and needing tbe services of a consulting engineer to prepare tbe estimates and bids, he sought and obtained the advice and services of the plaintiff, who prepared the estimates and bids for the work. The bids, being the lowest on several of the proposed contracts, were accepted by the municipality. There was at that time no understanding — and had been no suggestion by either the plaintiff or defendant — as to the compensation which the plaintiff should receive for the services which he had rendered and would thereafter render in procuring and carrying out the contracts, which were about to be let. The parties met at luncheon for the purpose of agreeing — and there undertook to agree — upon the matter of compensation which the'plaintiff'should receive for his services. What their agreement was — if there was an agreement or understanding between them — -is the question to be decided in this case. Nothing was reduced to writing and no one was present except the two parties to the negotiations. The plaintiff depends entirely upon his own testimony and certain corroborating circumstances in the manner in which the parties afterwards dealt with each other in carrying on the work. The plaintiff testified that, at the luncheon, he began the negotiations by proposing to charge a fee of 5 per cent, on the total amount of the proposed contracts, which amounted to approximately $240,000, and that he therefore proposed to charge $12,000 for his advice and services, and that the defendant deemed the fee too high, and suggested and held out for a flat fee of $10,000, and that he- (plaintiff) finally yielded to the counter proposition and agreed to the fee of $10,000. The defendant testified that the agreement was that the plaintiff should put up $5,000, against $12,000 which he (the defendant) put up, for carrying on the work, and that the defendant should receive one-third of the net profit. It is a fact, and is not disputed, that the defendant did have and invest in the undertaking $12,-000, that the plaintiff did not invest any money in the undertaking, and’ that no profit was made. While the parties were awaiting the letting of the New Orleans contracts, the defendant entered into a contract for the installation of certain storm sewers in the city of Shreveport, at the contract price of $37,-734.51; and it was. verbally agreed between him and the plaintiff that the latter’s com-, pensation for the services rendered and to be rendered in that connection should be on the same basis as for the services rendered and to be rendered in connection with the New Orleans contracts. The plaintiff therefore claims 5 per cent, of the $37,734.51, or $1,886.-73, as compensation for his services in connection with the Shreveport contract. The defendant eontend's that the compensation was to be one-third of the net profit, and that there was no profit. It is admitted that the plaintiff received from the defendant, from time to time, checks amounting to $1,800, as advance payments on the New Orleans work, and a check for $300 as an advance payment on the Shreveport work. Thereafter, and while the work was in progress in both cities, the plaintiff requested another payment of $500, and the defendant agreed to make the payment, but afterwards found that he was not financially able to make it, and so informed the plaintiff. It was then that they severed their relations. The plaintiff, in bis testimony, described the parting of the way, thus: About seven months after the New Orleans contracts were entered into, and while the work was in progress, he, having received the several checks amounting to $2,100, requested the further payment of $500, and the defendant promised to bring him a check for the amount on the following day but neglected to bring it. Plaintiff then suspected
 
 *753
 
 that defendant wished to be rid of his services, and decided to “bring the matter to a head.” A few days later, he and the defendant met at one of the places where the work was being done in New Orleans, and he asked the defendant if he had brought the check, and the latter replied that he had not. Plaintiff then insisted that he must have the check, and defendant replied that he was not going to give it. Plaintiff then asked if that meant that defendant was not going to make any more payments to him; and- defendant replied that that was the meaning of his refusal, and that he had already paid plaintiff enough. .The latter said: “Well, I suppose that means it is all over — it is all off.” And defendant.replied: “Tes; I guess so.” The plaintiff then walked away to his automobile, which was standing at the street corner, and, as he put his-foot upon the running board, defendant approached and asked how much he owed plaintiff, and the latter replied that he would send him a statement. The clef end-ant’s version of the severing of relations, according to his testimony, was somewhat different, viz.:
 

 “Well, he came,up — I came up on the job there one morning, and he met me there, and asked me if I had brought a cheek down for Mm; I told him ‘No’; he said, ‘Tou are going to let me have a check?’ I told him, ‘No; I didn’t have any to give him.’ So, he says: ‘Let’s call this transaction off.’ I said: ‘All right.’ And off he went — he went Ms way and I went my way.”
 

 Neither of the parties to this suit is discredited in any way, as a witness; hence we have no reason to consider either one of them less worthy of belief than the other. There are some circumstances which, in a measure, corroborate the plaintiff’s statement of his agreement with the defendant, and other circumstances which, in like measure, corroborate the defendant’s statement. Another witness, the manager for the United States Fidelity & Guaranty Company, surety on defendant’s bond as contractor, testified that plaintiff admitted to him, when the bonding company was about to take over and complete the New Orleans job, that he (plaintiff) was to receive one-third of whatever profit might be made on the contracts.
 

 We have no doubt about the veracity of either the plaintiff or the defendant. Our opinion is that they did not understand each other when they thought they had agreed upon the rate of compensation which the plaintiff was to receive for his services. The plaintiff believed that the compensation was to be on the basis of 5 per cent, of the total amount of the contracts — subject to the reduction to the flat fee of $10,000 for the New Orleans contracts. The defendant believed that the compensation was to be a contingent fee of one-third of whatever profit might be made on the contracts. There was a substantial reason for that belief, because the plaintiff, in his testimony, said that, in his conversation with the defendant at the luncheon, he (plaintiff), figured that the defendant’s profit on the contracts wóuld be about 15 per cent., and that he (plaintiff) had in mind that he should receive one-third of the prospective profit, or 5 per cent, of the total amount of the contracts. It is, not improbable that he mentioned those figures, and that the defendant believed that the plaintiff was to receive, not 5 per cent, of the amount of the contracts, but one-third of whatever might be the actual profit — which proportion, being one-third of the estimated profit, merely happened to be 5 per cent, of the total amount of the contracts.
 

 Our. conclusion is that the plaintiff failed to establish, by a preponderance of the evidence the alleged verbal contract on which his suit was founded. If we are wrong in this, it is because the plaintiff neglected to reduce to writing what he understood ’to be the agreement.
 

 The judgment is affirmed.